[L. A. No. 2884. Department Two.—October 11, 1911.]

## In the Matter of the Estate of MARY ASBURY KENT, Deceased.

WILL—PROOF OF EXECUTION — ABSENCE OF ATTESTING CLAUSE — EVI-
DENCE OF ONE SUBSCRIBING WITNESS—FAILURE TO RECALL FACT OF
PUBLICATION OR REQUEST TO WITNESS.—Although a will has no
attesting clause, and the attesting witnesses simply signed their
names thereto without even designating on the instrument that they
signed as witnesses, its due execution, in the absence of evidence
to the contrary, is sufficiently proved by the testimony of one of the
witnesses, the other not being procurable, to the effect that the will
was prepared by him at the dictation of the testatrix, that he signed
her name thereto at her request, and that he and the other witness
thereupon signed ·it as such, notwithstanding he ·was unable to
recollect whether the testatrix at the time the will was executed
made any declaration as to the instrument being her will, or whether
she asked him and the other subscribing witness to sign it as such.

ID.—DUE EXECUTION OF WILL PROVABLE BY PROOF OF HANDWRITING.—
Where an attesting witness has no recollection as to certain matters
connected with the making of the will, the case is, upon principle, in
the same condition as where he is dead, insane, or absent; and in such
case proof of the handwriting of the testator and of the subscribing
witnesses, or any of them, may be admitted as evidence of the
execution, under section 1315 of the Code of Civil Procedure; and
such evidence is sufficient, in the absence of any counter showing, to
prove the execution.

'APPEAL from a decree of the Superior Court of Los
Angeles County refusing probate of a will and from an order
refusing a new trial. Leon F. Moss, Judge.

The facts are stated in the opinion of the court.

Marshall Stimson, and Hugh T. Gordon, for Appellant.

Ward Chapman, and L. M. Chapman, for Respondents.

LORIGAN, J.—This was a contest of a will before probate,
and from a decree refusing its admission to probate and from
an order denying the motion of the proponent of the will for
a new trial these appeals are prosecuted.

The alleged will does not appear anywhere in the record on appeal, and the only matters concerning its execution or as to its contents are contained in the petition for its probate. It appears from that petition that the deceased died in the county of Los Angeles on August 30, 1904, a resident thereof. She left no property in California, but left a small tract of land in the state of Ohio which by her will she devised to her mother. The will purported to have been executed on August 9, 1904, in Los Angeles County, but no attempt was made to have it admitted to probate until April 10, 1910, nearly six years after her death.

The contest of the will was inaugurated by certain relatives of the deceased, who alleged that as the Ohio land left by her was ancestral property acquired by deceased from her father, they would, under the laws of Ohio, if deceased had died intestate, take it as her heirs at law, to the exclusion of her mother. The grounds of contest, among others, were that the deceased at the time the alleged will was executed was of unsound mind and incompetent to make it, and that said will was not executed in accordance with the laws of this state in that it was not subscribed by the testatrix nor declared by her to be her last will, nor did the two attesting witnesses, or either of them, sign the same as witnesses thereto at the request of testatrix or in her presence.

On the trial, which was had before the court without a jury, two witnesses were called by proponent. One of these, a physician,—Dr. Lewis—who had been called in to see the deceased during her last illness, testified that on or about August 12, 1904—his first visit—her mind was clear and she was perfectly rational, but that on or about August 24, 1904, when he called again, she was not so clear and rational, and was physically weak. The other witness—Dr. E. B. Alexander—was the regularly attending physician of the deceased, had drawn her will, and was one of the witnesses thereto. He was examined solely with reference to the preparation and execution of the will and the circumstances surrounding it.

He testified on direct examination that he had known the deceased during nearly all the time of his residence in Los Angeles—about eighteen years; that he was making her a visit one afternoon when Miss Kent (the testatrix) asked him to draw her will for her; that the materials for that purpose

were brought; that he sat by her bedside and prepared her will at her dictation; that the only other person present in the room at the time was Miss Bergheer, the attending nurse of the deceased; that after drafting the will the testatrix asked him to sign her name to it for her, saying she was too weak to sign it, and he did so; the testatrix then asked him and Miss Bergheer to sign it as witnesses, which they did, both signing immediately after it was drawn, at the side of the bed occupied by testatrix; that after the will was signed by himself and Miss Bergheer he left it with testatrix and did not see it again until about a month before the trial of the contest.

On cross-examination the witness stated that he could not recollect whether testatrix at the time the will was executed made any declaration as to the instrument being her will nor did he remember definitely whether the testatrix asked him and Miss Bergheer to sign it as witnesses; that they were the only ones present when he drafted the will or when it was witnessed and that she must have asked him and Miss Bergheer to sign it as witnesses or they would not have done so; that the matter did not impress itself upon his memory particularly and that on account of the length of time that had elapsed since the transaction he had no recollection as to these matters.

At the close of the testimony of this witness the court said: "I do not see that there is any use in taking up any further time with this woman's mental condition. It seems to me that you have not shown any execution of the will unless you have some other witness to prove it." The attorney for proponent responding that he had no further witnesses except on the question of the mental capacity of the testatrix, the court announced its conclusion that under the evidence the will was not entitled to probate and a decree to that effect was entered accordingly.

The proponent moved for a new trial on the ground, among others, that the evidence did not justify the decree of the court denying probate, which motion being denied, an appeal from such order of denial, and the judgment are taken.

We are satisfied that the point made by the proponent that the decision of the court denying probate of the will on the evidence adduced was not warranted must be sustained. In other words, that the testimony of Dr. Alexander as a sub-

scribing witness to the will, as it stood when the court practically ordered a nonsuit against the proponent, constituted a sufficient showing of the due execution of. the will of the testatrix.

It does not appear (because, as we have said, a copy of the will is not in the record) whether it contained an attesting clause such as is usually attached to wills, and the presence of which, when the memory of the attesting witnesses fails, may be resorted to as presumptive evidence that the statutory requirements recited therein to have been performed were complied with, as, for instance, when it recites that the will was signed by. the testator in the presence of the attesting witnesses, declared to be her will and that their signatures to the will as witnesses were signed at the request of the testator in his presence and in the presence of each other. For the purposes of this discussion it may be assumed that there was no such attesting clause and that the attesting witnesses simply signed their names thereto without even designating on the instrument that they signed as witnesses.

Considering now the evidence adduced. It is not necessary to go into any elaborate consideration of this matter or to discuss the authorities referred to by the respective counsel in the case arising in other jurisdictions because the sufficiency of the testimony of Dr. Alexander to sustain the due execution of the will is clearly settled in this state by the case of *Estate of Tyler*, 121 Cal. 405, [53 Pac. 928], to which, doubtless, the attention of the trial court had not been directed. This case was the converse of the one before us as to the ruling of the superior court. In the Tyler case the court held that the due execution of the will was sufficiently proved and the contention on appeal was that the evidence did not sufficiently show it; here, the trial court held that the evidence was insufficient to show due execution and the claim on this appeal is that it did. Yet, it will be seen that in the Tyler case and in this the evidence relied on to prove due execution was practically of the same character, though in some particulars the evidence tending to show due execution of the will in the present case is somewhat stronger than appears in the case referred to.

In the Tyler case the objections of appellant to the sufficiency of the evidence sustaining the probate of the will were (among others not involved here) that such evidence did not

sufficiently show that the testatrix had declared to the subscribing witness that the instrument was her will or that she requested one of the subscribing witnesses—Berger—to sign his name as a witness. Comparing the facts as stated in the Tyler case with those in this case: There was no attesting clause to the will under consideration in that case; there, the signature of the testatrix was proven as so it was proven here; there, there were two subscribing witnesses—Hurd and Berger; at the time of the contest Hurd was dead and his signature proven; here, the witness Bergheer could not be produced and her signature was proven; Berger, the other subscribing witness to the will was called as a witness in the Tyler case; he remembered signing the will and swore to his signature but he had no definite recollection of certain things which occurred at the time he attested the will; he could not remember whether the testatrix actually signed the instrument or verbally acknowledged her signature to it in his presence or whether she declared the document to be her will in the presence of the attesting witnesses or whether she requested him to sign as an attesting witness. He did not testify, however, that these things were not done, nor was there any evidence impeaching the execution of the will or to throw upon it the shadow of any kind of suspicion. Here, Dr. Alexander necessarily remembered the signature of the testatrix because he wrote her name at her request, though, like Berger, he did not remember whether she published the will or requested him to sign it as a witness. But neither did Berger in the Tyler case nor Alexander here testify that these things had not been done; nor was there any evidence impeaching the execution of the will involved here or to throw upon it the shadow of any kind of suspicion. Having stated the further fact that Berger was called as a witness a dozen years after the making af the will, the court in the Tyler case then discusses the rule which must govern when the question of the due execution of a will is presented under such evidence. It says: "Appellants contend that the will must fall merely because the memory of the witness failed; the court held that as one attesting witness was dead and the other unable to recollect, as above stated, and as there was no evidence tending in any way to invalidate the will, proof of the signatures of the testatrix and the attesting witnesses was, under the

circumstances described, sufficient to establish the due execution of the instrument. We see no valid reason for disturbing this conclusion. . . . It is our view, both upon reason and authority, that the finding of the trial court that the will was duly executed is beyond disturbance here. While the code provides that certain things are necessary to the making of a valid will, it does not prescribe how those things shall be proven; it leaves that to the general rules of evidence. There is provision, it is true, that if the attesting witnesses are alive and present in the county they must, in the event of a contest, be called. This is a very natural and just provision; for in such case the failure of the proponent of a will to call his attesting witnesses would be a very suspicious circumstance. But there is no statutory declaration, and no principle of law, to the effect that a will executed in due form shall go for naught unless an attesting witness after the lapse of many years shall continue to recollect anything material that occurred at the time he subscribed his name to it. Such a rule would make the validity of the will dependent, not upon the disposing mind of the testator, nor his freedom from duress, undue influence or fraud, nor upon his clear expression of his intention in the body of the instrument, nor upon its execution in conformity to the form and ceremony prescribed by the statute; but upon the fullness, accuracy, and persistency of the recollection of one of the persons who signed it as a witness. Such a rule cannot be maintained either upon principle or precedent. What constitutes a sufficient execution of a will is prescribed by the statute; what constitutes sufficient proof of such execution is not so prescribed, and is a different question—a question to be solved by the general principles of evidence. In the case at bar there was no person other than Berger present at the making of the will, who was capable of testifying, at the time of the trial, to its execution. . . . The fact that the instrument was signed by the testator and the attesting witnesses was proven. There was no evidence tending to disprove the proper execution of the will, or to impeach it in any way. These are the facts of the case; and it is not necessary for the purposes of this decision to go beyond them. We are satisfied that upon these facts the court was warranted in holding the will duly executed. Where an attesting witness has no recollection as to certain matters connected with the

making of the will, the case is, upon principle, in the same condition as where he is dead, insane, or absent; and in such case 'proof of the handwriting of the testator and of the subscribing witnesses, or any of them, may be admitted as evidence of the execution' (Code Civ. Proc., sec. 1315); and such evidence is sufficient in the absence of any counter-showing to prove the execution."

The court then proceeds to refer to and discuss authorities (text and adjudications) abundantly sustaining the principle that where a will shows compliance with other provisions of the law which must appear upon its face—that is, it purports to be signed by the testatrix and witnessed—upon proof of the fact of such execution it will be presumed on the death of the witnesses to the will being shown, or on the failure of their memory, that all the other details of the statute, proof of which depends upon the recollection of the witnesses, were duly observed.

Appellant as one of his grounds for a new trial set up newly discovered evidence. He made a clear showing that he had used extreme diligence in endeavoring to discover the whereabouts of the other subscribing witness to the will—Miss Bergheer—and was unable to find her until after the judgment of the court denying probate of the will was entered. He discovered her in Seattle and obtained an affidavit from her that she would testify that in the execution of the will to which she was a witness, all the statutory requirements had been complied with. In view, however, of the conclusion that we have reached that the evidence of Dr. Alexander, as the case stood when the court of its own motion nonsuited appellant, was sufficient of itself to show due execution of her will by testatrix and, hence, a new trial must be ordered, it is unnecessary to discuss the matter of the newly discovered evidence as a further alleged ground why appellant should have been granted a new trial.

Some points of practice as to the validity of the appeal taken by appellant are raised on this hearing, but we consider them without merit.

The judgment and order appealed from are reversed.

Henshaw, J., and Melvin, J., concurred.

Hearing in Bank denied.