[Sac. No. 304. In Bank.—July 11, 1898.]

In the Matter of the Estate of ANNA TYLER, Deceased. PRUDENCE McFADYEN et al., Appellants, v. EMMA R. ROSE, Executrix, etc., Respondent.

WILLS—PROOF OF EXECUTION—DEATH OR FORGETFULNESS OF WITNESS—PRE-SUMPTION.—If the subscribing witnesses to a will are dead, or if, being present, they are forgetful of any fact essential to its due execution, it will be presumed from the proved fact of signature or of handwriting of the testator and witnesses, that the requisites of the law were duly observed, whether it is so stated in the attestation clause or not, unless the contrary is proved.

ID.—BLANK IN ATTESTATION CLAUSE—SUFFICIENCY OF PROOF—FINDING OF DUE EXECUTION.—Where the attestation clause of a will stated: "In witness whereof I have hereunto set my hand and seal in presence of John Heard and ————, who I request to sign their names hereto as subscribing witnesses," and the person named and another witness signed their names after the name of the testatrix, and the named witness being dead, the handwriting of the testatrix, and of such named witness were proved; and the other witness testified to signing his name in the presence of the testatrix and of the other witness, but could not remember whether he saw the testatrix sign the will, the evidence is sufficient, in the absence of any counter-showing, to prove the due execution of the will, and a finding in favor of such execution cannot be disturbed upon appeal.

APPEAL from an order of the Superior Court of Sacramento County, admitting a will to probate and issuing letters of administration thereon, and from an order denying a new trial of a contest of the will. Matt. F. Johnson, Judge.

The facts are stated in the opinion of the court.

Frank D. Ryan, and James B. Devine, for Appellants.

C. W. Baker, and Albert M. Johnson, for Respondent.

McFARLAND, J.—This is a contest of the will of Anna Tyler, deceased, instituted by certain of her heirs. The court below held the will good, and the contestants appeal.

The appellants make no contention that the testatrix at the time the will was made was of unsound mind, or under undue influence; or that she did not knowingly sign it; or that it does not clearly express her evident intentions as to the disposition of her property; or that the will is not properly attested; or that on its face it does not comply with all the statutory provisions touching the making of wills. The sole contention of appellants is that the execution of the will was not *sufficiently proven*. And as to this point appellants did not themselves introduce any evidence to show that the will was *not* duly executed; they rely entirely upon the asserted insufficiency of the evidence of respondent. Indeed, the appellants offered no evidence at all on any material issue in the contest; they rest solely upon the proposition that the respondent did not prove enough.

The closing part of the will is all that need be quoted here, and it is as follows:

"In witness whereof I have hereunto set my hand and seal in the presence of John Heard and————————, who I request, to sign their names hereto as subscribing witnesses.

             "(Signed) ANNA FOSTER (Seal).

"(Signed) JOHN HEARD.

         "FRED B. BERGER."

The objections made by appellants to the sufficiency of the evidence are that it does not sufficiently show that the testatrix signed the will in the presence of the subscribing witnesses or acknowledged her signature in their presence; or that she declared to them that the instrument was her will; or that she requested the subscribing witness Berger to sign his name as a witness.

The evidence, and the facts proven, were substantially as follows: The signature of the testatrix was proven. The attesting witness Heard was dead, and his signature was proven. The other subscribing witness, Berger, did not live in the county; and if he had not been called as a witness at all proof of his signature to the will—together with proof of the signature of Heard and of the testatrix—would clearly have made a *prima facie* case of its due execution. (Code Civ. Proc., sec. 1315.) But respondent (unfortunately, it seems) brought him from another county to testify at the trial; and it turned out that, although he remembered signing the will and swore to his signature, he had no definite recollection of certain things which occurred at the time he attested the will. He could not remember whether the testatrix actually signed the instrument or verbally acknowledged her signature to it in his presence, or whether she declared the document to be her will in the presence of the attesting witnesses, or whether she requested him to sign as an attesting witness. He did not testify, however, that these things were not done; nor was there any evidence to impeach the execution of the will, or to throw upon it the shadow of any kind of suspicion. Appellants contend that the will must fall merely because the memory of the witness failed; the court held that as one attesting witness was dead and the other unable to recollect, as above stated, and as there was no evidence tending in any way to invalidate the will, proof of the signatures of the testatrix and the attesting witnesses was, under the cir-

cumstances described, sufficient to establish the due execution of the instrument. We see no valid reason for disturbing this conclusion.

The witness Berger gave his testimony a dozen years after the making of the will; and as he went hurriedly from his business to be an attesting witness, and stayed only a short time at the place where the will was signed, it is not surprising that he had forgotten some of the things that happened on that occasion. He had not, however, forgotten all that occurred. He remembered that he was called as an attesting witness; that he went to a room in a certain house; that there were present there the testatrix, the other attesting witness, Heard, Mr. Tyler, husband of the testatrix, and a little girl (the beneficiary in the will), then too young to remember what occurred; that the testatrix, whom he well knew, was in her usual health; that he heard part of the will read; that Heard and the witness (Berger) signed the will as witnesses, and that when they did so the testatrix was there present; that witness then partook of some refreshments at the invitation of the testatrix, and immediately afterward left; and that the testatrix and Heard were both there all the time that witness was present—to all of which he testified. He testified, therefore, to, at least, some material things—particularly that the attesting witnesses signed the will, and that they both signed it in the presence of the testatrix and of each other. We state that he remembered and testified to these things merely because it brings the case more nearly within the facts of some of the cases cited below, where an attesting witness had recollected some of the occurrences attendant upon the making of a will, but had forgotten others. Such facts strengthen the finding of a court that the will was duly executed.

It is our view, both upon reason and authority, that the finding of the trial court that the will was duly executed is beyond disturbance here. While the code provides that certain things are necessary to the making of a valid will, it does not prescribe how those things shall be proven; it leaves that to the general rules of evidence. There is provision, it is true, that if the attesting witnesses are alive and present in the county they must, in the event of a contest, be called. This is a very natural and just provision; for in such case the failure of the proponent

of a will to call his attesting witnesses would be a very suspicious circumstance. But there is no statutory declaration, and no principle of law, to the effect that a will executed in due form shall go for naught unless an attesting witness after the lapse of many years shall continue to recollect everything material that occurred at the time he subscribed his name to it. Such a rule would make the validity of the will dependent, not upon the disposing mind of the testator, nor his freedom from duress, undue influence or fraud, nor upon his clear expression of his intention in the body of the instrument, nor upon its execution in conformity to the form and ceremony prescribed by the statute; but upon the fullness, accuracy, and persistency of the recollection of one of the persons who signed it as a witness. Such a rule cannot be maintained either upon principle or precedent. What constitutes a sufficient execution of a will is prescribed by the statute; what constitutes sufficient proof of such execution is not so prescribed, and is a different question—a question to be solved by the general principles of evidence. In the case at bar there was no person other than Berger present at the making of the will, who was capable of testifying, at the time of the trial, to its execution. The husband of the testatrix and the other witness, Heard, were dead, and the little girl was too young at the time of the making of the will to know anything about it. The fact that the instrument was signed by the testatrix and the attesting witnesses was proven. There was no evidence tending to disprove the proper execution of the will, or to impeach it in any way. These are the facts of the case; and it is not necessary for the purposes of this decision to go beyond them. We are satisfied that upon these facts the court was warranted in holding the will duly executed. Where an attesting witness has no recollection as to certain matters connected with the making of the will, the case is, upon principle, in the same condition as where he is dead, insane, or absent; and in such case "proof of the handwriting of the testator and of the subscribing witnesses, or any of them, may be admitted as evidence of the execution" (Code Civ. Proc., sec. 1315); and such evidence is sufficient, in the absence of any counter-showing, to prove the execution.

Authorities supporting the above conclusion are numerous.

We will refer to some of them. In paragraph 38a of Greenleaf on Evidence, volume 1, we find the following: "*Execution of instruments. Regularity of acts.* Of a similar character is the presumption in favor of the due execution of solemn instruments. Thus, if the subscribing witnesses to a will are dead, or if, being present, they are forgetful of all the facts, or of any fact material to its due execution, the law will in such cases supply the defect of proof, by presuming that the requisites of the statute were duly observed." Authorities are cited sustaining the text.

In Beach on the Law of Wills, the author in paragraph 39 says: "On the death of the witnesses, or on *the failure of their memory,* the proof of the fact of execution begets the presumption that all the details of the statutory requirements were complied with, whether so stated in the attestation clause or not, *unless the contrary be proven.*"

In Jones on Evidence, volume 1, section 44, it is said as follows: "If a will purports to have been duly signed, attested, and witnessed, on proof of execution the court will presume, in the case of the death of the witnesses or in case they do not remember the facts connected with its execution, that the law was complied with; and the details of the statutory requirements will be presumed, whether it is so stated in the attestation clause or not, unless the contrary is proven." Other text-books state the same rule.

There are innumerable judicial decisions to the same point. It is sufficient to cite the following: *Burgoyne v. Showler,* 1 Rob. Ecc. 10; *In re Leach,* 12 Jur. 381; *Fatheree v. Lawrence,* 33 Miss. 622, and cases there cited; *Deupree v. Deupree,* 45 Ga. 415; *Ela v. Edwards,* 16 Gray, 91; *Eliot v. Eliot,* 10 Allen, 357; *Clarke v. Dunnavant,* 10 Leigh, 13; *Kirk v. Carr,* 54 Pa. St. 285; *McKee v. White,* 50 Pa. St. 354. See, also, cases cited in the notes to the sections of the text-books above quoted.

As the question here involved is one of considerable importance, we will notice a few of the expressions by which the principle is declared in the cases above cited. In *Burgoyne v. Showler, supra,* it is said: "I think I should be establishing a very dangerous precedent if I were to pronounce against this will; I think the principle on which Sir H. J. Fust has acted in these cases is

this—that in the absence of the recollection of the witnesses he will presume the will to be duly executed." In *In re Leach, supra,* each of the witnesses "remembered that he signed his name as a witness to the will in the testator's presence, but neither of them could recollect whether the testator signed his name in their presence, nor whether his signature was already set to the will when they signed, or whether the other witness was present"; and upon this testimony it was held that "the presumption is in favor of the due execution, according to the principle laid down by the learned judge who sat for me in the case of *Burgoyne v. Showler, supra,* and I therefore decree probate to pass as prayed." In *Kirk v. Carr, supra,* the court says: "Want of memory will no more destroy the attestation than insanity, absence, or death." In *Clarke v. Dunnavant, supra,* Tucker, J., in his concurring opinion says, having alluded to a case where the attesting witness to a will had sworn affirmatively that the statute had not been complied with in making it: "How is it where, as in this case, they do not negative a compliance with the statute, but merely have forgotten the circumstances? It seems to me that, upon fair analogy, the question should be decided as it would be *if the witness were dead and his handwriting proved.* And so, accordingly, I think, are the authorities to be understood." After referring to the case of *Jackson v. Legrange,* 19 Johns. 386, approvingly, he says: "Where the memory of the witness fails, the proof of his signature will justify an inference that all the requisites of the law have been complied with." Further on he says: "From the whole of these cases, then, I deduce that on a question of probate the defect of memory of the witnesses will not be permitted to defeat the will, but that the court may, from circumstances, presume that the requisitions of the statute have been observed; and that they ought so to presume from the fact of attestation, unless the inferences from the fact are rebutted by satisfactory evidence." Having alluded to suggestions of mischief which might follow the decision, he says: "Far greater mischiefs would arise from a contrary decision, which should make the rights of every devisee and legatee depend not only upon the honesty, but also upon the slippery memory of witnesses. Under such a decision no man could be sure of

dying testate, since the forgetfulness of a witness would frustrate all his precaution; and a question of title by will, which, in the spirit of the statute of frauds, the legislature designed to rest upon written evidence alone, would, after all, depend upon the integrity and the memory of those who were called on to attest the instrument. The consequence would be, that I may have a good will by me today, but if I live five years it may become a void instrument, because one of the witnesses to it cannot recall some ceremony of its execution. Such a consequence I would not aid in bringing about. It would tend, I have no doubt, to multiply the attempts, already too common, to set aside wills; since the chances of success must be very much increased, if the frailty of human memory is to be called in to the aid of the discontented heir." In the leading opinion by Parker, J., the same views are expressed, and he says: "Few persons witnessing a paper would, after eight or nine years, be able to recall every fact that might be necessary to give it legal validity; and if their defect of memory is, without other impeachment, to prejudice the rights of parties claiming under it, the mischief would be greater than any that can result from this decision." In *Ela v. Edwards, supra,* the court say: "The obvious policy of the law, as heretofore declared in this commonwealth, has been that no man's will should be defeated through the want of memory on the part of the attesting witnesses to the facts essential to a good attestation." In *Deupree v. Deupree, supra,* the court below had charged the jury that, in case of the defective memory of an attesting witness, proof of his signature would be sufficient, provided there was an attestation clause which recited the things which the witness had forgotten, but that there would be no presumption of due execution in the absence of an attestation clause; and the appellate court held this to be error. The court says: "There is no question as to the general rule, that, on the death of the witnesses, or on the *failure of their memory,* the proof of the fact of execution begets a presumption that all the details of the fact were such as the law requires." After citing a number of cases the court say: "These cases establish, also, that this presumption does not depend on the recitals in the attestation clause." Further on the court say: "As a matter of course, the presumption is stronger or weaker, according to any ma-

terial facts connected with the case, and, if it was recited, this would strengthen it. But it is a wise rule of law that such a presumption should exist. How many wills do not come up for probate until many years after the execution of them! Sometimes the witnesses can only recognize their own handwriting; sometimes they only remember the fact that the testator signed, and perhaps only that they signed. Who was present, and all the other details have passed from memory. To say that under such circumstances the will is not to be probated would be a death blow to wills." The statutes of Georgia on the subject are substantially like ours; and there is nothing in our code which prescribes any form for the attestation of a subscribing witness, or that there shall be any recitals in such attestation.

The authorities cited by appellants are not in point—unless it be that of *Luper v. Werts*, 19 Or. 122. In *Estate of Walker*, 110 Cal. 397, 52 Am. St. Rep. 104, the court was not dealing with the general question of the sufficiency of proof of the execution of a will; the facts there were undisputed, and the only question was whether or not one of the alleged attesting witnesses had subscribed his name to the document. The other cases cited do not deal with the question of the sufficiency of the proof of execution. In *Luper v. Werts, supra,* there are some expressions in the opinion of a majority of the court tending to support appellant's contention. The case was decided by a divided court; and the decision could have well been placed upon the fact that the testimony of Peyser, one of the subscribing witnesses, showed affirmatively that the will had not been properly executed. The case illustrates the danger of upsetting a will, even upon the adverse testimony of a subscribing witness, unless the attendant circumstances strengthen his testimony; for it seems to have been admitted there that, as said by Lord, J., in his dissenting opinion: "Peyser is an unwilling witness, of an unreliable character, whose testimony, as disclosed by the record, indicates a purpose to defeat the will." The testimony of a witness who had solemnly subscribed to a will as an attesting witness, and afterward endeavored to overthrow it, should be closely scrutinized; and, no doubt, the court below in that case sustained the will because there were circumstances which caused it to disbelieve the testimony of Peyser. What was said in the

opinion of the court as to the question here involved was mostly dictum; and if anything can be there found not in accordance with the views herein expressed, we think, notwithstanding our high opinion of that court, it was contrary to the great volume and weight of authority.

The judgment and orders appealed from are affirmed.

Van Fleet, J., Garoutte, J., Temple, J., Beatty, C. J., and Harrison, J., concurred.